# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## REPASS V. RICHMOND AND OTHERS.

### JUNE 27, 1901.

1. ESTOPPEL—*Acts or Admissions Acted on by Another.*—If the act or admission of a party cannot be contradicted without fraud on his part and injury to another party whose conduct has been influenced thereby, he will be estopped to deny such act or admission. But an estoppel by conduct does not exist where the party setting it up has not relied on the conduct of the other party, nor been induced to do something which otherwise he would not have done.
2. CHANCERY PRACTICE—*Delay in Pleading—Estoppel.*—The mere delay of a defendant in chancery in setting up a particular defence will not estop him from making the defence where it does not clearly appear that the complainant was, by such conduct, misled to his prejudice.
3. EVIDENCE—*Execution of Similar Contracts with Third Persons—Motive or Intent.*—Except where the knowledge, motive or intention of a party is a material fact in the case, the general rule is that no reasonable presumption can be formed as to the making or the execution of a contract by a party with one person in consequence of the mode in which he has made or executed similar contracts with other persons. Neither can the parties be affected by the conduct or dealings of strangers. Evidence of this description is uniformly rejected.
4. EVIDENCE—*Corroboration—Prior Consistent Statements—Bias.*—Evidence of prior consistent statements of a witness, for the purpose of corroboration, is generally rejected, except to repel an imputation of bias by reason of motives of interest or relationship. Evidence of such statements, however, made before the acquisition of the interest or the date of the relationship may be received to repel the imputation.
5. EVIDENCE—*Party's Prior Declarations in His Own Behalf.*—A party cannot give in evidence his own declarations in behalf of himself.

6. ISSUE OUT OF CHANCERY—*New Trial—Rule Governing—What Record Must Show in Appellate Court.*—Motions for new trials of issues out of chancery are not governed by exactly the same rules as in actions at law. Although errors may have been committed on the trial of the issue, in admitting or rejecting evidence, or in giving or refusing instructions, yet if the chancellor is of opinion that the verdict was unaffected by such errors, or is satisfied, upon a consideration of the whole case, that the result ought not to have been different had there been no error on the trial of the issue, he may refuse to order a new trial, and enter a decree in accordance with the finding of the jury. But if improper evidence was received, and it cannot be seen or said that the improper evidence did not affect the verdict, the decree based solely upon the verdict, rendered upon conflicting evidence, and not upon a consideration of the whole case, should be reversed.

Appeal from a decree of the Circuit Court of Wythe county, pronounced September 28, 1900, in a suit in chancery, wherein the appellee, E. S. Repass, was the complainant, and the appellant and the other appellees were the defendants.

*Reversed.*

The opinion states the case.

*Fulton & Fulton, A. A. Campbell* and *C. B. Thomas,* for the appellant.

*M. M. Caldwell, Robert Crockett, J. L. Gleaves,* and *W. S. Poage,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

J. W. Repass, who was treasurer of Wythe county from July 1, 1893, to June 30, 1895, gave two notices to E. S. Repass, one of his deputies, and the sureties on the bond of the latter, that he would, at the February term, 1897, of the Circuit Court for that county, move for judgments for the amount for which his deputy was in default, together with interest and damages thereon. Upon the calling of the notices, the deputy presented a bill to the court praying for an injunction to restrain the plaintiff

from a further prosecution of his motions at law, making the sureties on both his bonds, as well as the treasurer, parties defendant. The bill admitted the execution of the bonds, but alleged that the accounts between him and the treasurer were in such a complicated condition that a settlement thereof was necessary by a commissioner of the court, when it would be found that neither he nor his sureties owed the treasurer anything. The injunction was granted as prayed for.

At the April rules, 1897, the appellant answered the bill, and at the May rules filed his cross-bill, making E. S. Repass and his sureties on both bonds, parties defendant.

On June 5th following a consent order was entered directing a special commissioner of the court to take an account between the treasurer and his deputy, and report what balance, if any, was due from the deputy. The commissioner took the account and reported it to the court in August, 1898, by which it appeared that there was a large balance due from the deputy and his sureties on his bond dated February 25, 1890. At the following (September) term of the court the sureties on that bond tendered a plea of *non est factum*, which the court rejected upon the ground that the filing of the plea had been unduly delayed. At the next (March) term of the court they filed answers to both the original and cross-bills, in which they denied, among other things, that they had executed the bond dated February 25, 1890. Depositions were taken by both parties, and at the February term, 1900, of the court an issue out of chancery was directed upon motion of the said sureties, over the appellant's objection, to determine whether the bond in question was their true writing obligatory. Upon the trial of that issue, the jury found that the said writing was not the bond of the sureties. The motion of the appellant to set aside the verdict was overruled, an order was entered approving it, and directing it to be certified to the chancery side of the court, in which a decree was entered dismissing the original and amended bills as to the

parties in whose favor the verdict was found. From that decree this appeal was taken.

The first error assigned is the action of the court in awarding the issue out of chancery.

It is not claimed that, under ordinary circumstances, it was not a proper case in the discretion of the trial court for an issue out of chancery; but it is insisted that the delay of the appellees in denying the execution of the bond, their consent to the order for an account, their appearance before the commissioner as witnesses, and the testimony given by them estopped them from relying upon the defence of *non est factum*.

It is settled law that whenever an act is done or a statement is made by a party, which cannot be contradicted without fraud on his part and injury to the other party whose conduct has been influenced by the act or admission, the character of estoppel will attach to what would otherwise be a mere matter of evidence. But an estoppel by conduct does not exist where the party setting it up has not relied upon the conduct of the other party, and been induced to do something which he otherwise would not have done. *Bargamin* v. *Clark*, 20 Gratt., at page 552; *Dair* v. *U. S.*, 16 Wall. 1, 4.

As the principle of estoppel invoked by appellant to preclude the appellee's sureties from setting up the defence of *non est factum* to the bond of their principal rests upon the ground of fraud, and as the effect might be to shut out the truth, it is never applied, as was said by Judge Joynes in *Bargamin* v. *Clark*, *supra*, in any of its branches upon an uncertain and speculative state of facts.

Both in the original and cross-bills to which the appellees were parties defendant, it was alleged that they had executed the bond, the validity of which the issue out of chancery was directed to try. At the time the consent decree for an account was entered, they had neither pleaded to nor answered these bills, and did not offer to do so until after the account ordered had been

taken and reported to the court. The deputy treasurer claimed in his bill that upon a proper settlement it would appear that he was not indebted to the appellant in any amount, and prayed for an account. The treasurer insisted in his answer and cross-bill that there was a large balance due from his deputy, and that there was no necessity for an account, but asked, if the court was of opinion that an account was necessary, that it should be taken as speedily as possible. Before the next term of the court, and within less than thirty days after the cross-bill was filed, the appellant gave notice that he would move the judge in vacation to enter an order for an account. The other parties accepted service of the notice and consented to the order for an account, which directed a special commissioner of the court "to take, state, and report an account of all the tax tickets which were placed by J. W. Repass, late treasurer of Wythe county, in the hands of Emory S. Repass, his deputy, for collection, and what payments he has made to J. W. Repass on account of the tickets which he has collected, and what other credits said Emory S. Repass, as said deputy, is entitled to credit for in his account with said J. W. Repass for claims settled by him and turned over to said J. W. Repass, commissions, delinquent list, etc., and what balance, if any, there is due from said Emory S. Repass as said deputy treasurer of Wythe county on account of tax tickets taken as aforesaid for collection."

The commissioner was also directed to report any other matter which he might deem pertinent, or as to which any party might require him to report.

As before stated, the order for the account was prayed for by the deputy treasurer in his bill, and made upon the motion of the appellant. They had the right to the account, and the court ought to, and no doubt would, have made the order even if the appellees had not consented to it. Indeed, they had no right to object, as the parties asking it were entitled to it as between

themselves, irrespective of the question of the liability of the appellees on the bond in controversy.

The appellees neither made nor attempted to set up any defence until they tendered their plea of *non est factum.* Their consenting to a decree for an account, to which they had no right to object; their testifying before the commissioner as witnesses for the deputy treasurer that they had heard the treasurer admit that the sum due from his deputy was much less than he now claimed; their failure to make any defence until the account came in showing the balance due from the deputy, are circumstances to be considered in passing upon the plea of *non est factum,* but they do not amount to an estoppel, for it does not clearly appear that the appellant was, by their conduct, misled to his prejudice, without which, whatever may be its force as evidence, their conduct will not amount to an estoppel.  Bigelow on Estoppel, 433-4, 492-3; 7 Rob. Pr., 447-8.

Upon the trial of the issue, the plaintiff offered to prove that when he was first elected treasurer he obtained from the clerk of the County Court printed forms of bonds taken by the Commonwealth from its officers, and that one of these printed forms was filled out by the clerk of the court for the guidance of the plaintiff in taking bonds from his deputies, and that his custom was, whenever he appointed deputies, to fill their bonds, leaving no blanks except the names of the sureties and the date of the bonds; that when they applied for the bonds he (plaintiff) dated and handed them to the deputies to have their sureties sign them; that in the year 1890 he prepared three bonds, one for each of his deputies, on the same day, at the same time, with the same pen and ink, laid them away until his deputies came to get them to have them signed by their sureties respectively, when he inserted the dates; that one of those bonds was dated January 17, 1890, another the 24th of that month, and the bond in question in this case the 25th day of February following. The plaintiff then offered in evidence the bonds executed by his

other deputies and their sureties, dated respectively January 17 and 24, 1890, that the jury might compare them with the bond in issue. All this was objected to by the defendants upon the ground that it was irrelevant testimony. The court sustained the objection, and refused to allow the form furnished by the clerk and the bonds executed by the other deputies and their sureties to go to the jury. The plaintiff then offered to prove that the bonds of his other deputies had been sued on, the suits defended, and that those bonds were filled out when they were delivered to the deputies to be signed, with the avowal that his purpose in offering this evidence was to enable him to get the bonds of his other deputies before the jury in order that they might inspect and compare them with the bond in controversy. This evidence was also rejected. Each of these rulings is assigned as error.

The defendants were not parties to the bonds of the other deputies. Those bonds were not parts of the *res gestœ*, and had no connection whatever with the bond in controversy.

Except in certain cases where the knowledge, motive or intention of the party is a material fact in the case, as it was not in this case, the general rule is that no reasonable presumption can be formed as to the making or execution of a contract by a party with one person in consequence of the mode in which he has made or executed similar contracts with other persons. Neither can parties be affected by the conduct or dealings of strangers. Transactions which fall within either of these classes are *res inter alios acta*, and evidence of this description is uniformly rejected. 1 Phillips on Ev. 748-9; 1 Greenleaf on Ev., secs. 52 and 53.

A. R. Willard, one of the defendants, testified on the trial of the issue out of chancery that the bond upon which he was sued as one of the sureties of the deputy treasurer was not filled up when he signed it. By cross-examination and otherwise, an effort was made to show that this statement was in conflict with his conduct and admissions prior to that time, and that his

present claim and statement that the bond was blank when he signed it, and the name of the obligee and the conditions therein were afterwards inserted, was an afterthought. To corroborate Willard's statement, appellees were permitted to prove by Isaac N. Huddle that he had heard Mr. Willard say about six years before that the bond was blank when he signed it.

The admission of Huddle's testimony upon this point is assigned error.

It is a general and well-nigh universal rule that evidence of what a witness said out of court cannot be received to corroborate his testimony. 1 Greenleaf on Ev., sec. 469; *Howard* v. *Com'lth*, 81 Va. 489, 490.

The only exception to this rule given by Mr. Greenleaf is that, where a design to misrepresent is charged upon the witness in consequence of his relation to the party or the cause, it may be shown that he made a similar statement before that relation existed. 1 Greenleaf on Ev., sec. 469.

Mr. Phillips, after stating the general rule, says that in one point of view a former statement by the witness appears to be admissible in confirmation of his evidence, and that is, where the counsel on the other side impute a design to misrepresent from some motive of interest or relationship; there, indeed, in order to repel such an imputation it might be proper to show that the witness made a similar statement at a time when the supposed motive did not exist, or where motives of interest would have prompted him to make a different statement. 2 Phillips on Ev. 974.

Mr. Starkie says it is agreed that such evidence may, under special circumstances, be admitted, as, for instance, in contradiction of evidence tending to show that the account was a fabrication of late date, and where, consequently, it becomes material to show that the same account has been given before its ultimate effect and operation, arising from a change of circumstances, could have been foreseen. 1 Starkie's Ev. 149.

Mr. Taylor, in his work on Evidence, Vol. 2, sec. 1476, says that such evidence is not admissible unless the witness be charged with "a design to misrepresent in consequence of his relation to the party or the cause, in which case it may be proper to show that he has made a similar statement before that relation existed." See also *Howard* v. *Com., supra; Ellicott* v. *Pearl,* 10 Peters 415; *Robb* v. *Hackley,* 23 Wend. 50; 1 Wharton's Ev., sec. 570.

The witness, whose former statement was permitted to go to the jury, was not merely a witness, but was also a party to the suit and to the bond, whose validity was the matter to be determined by the jury. His relation to the bond was the same when his prior statement was made that it was when he testified in the cause. This being so, it is clear that under the rule as stated by Mr. Greenleaf and the other authorities cited, evidence of his former statements was inadmissible. Not only was the evidence not within the exception to the general rule, but it is obnoxious to another equally well settled rule of law that a party cannot give in evidence his own declarations, and upon this ground also such evidence is held to be inadmissible. *L. & P. S. Turnpike Co.* v. *Heil,* 20 N. E. Rep. 703.

If this were an action at law, the admission of the evidence in question would be a good ground for setting aside the verdict; but motions for new trials in issues out of chancery are governed by somewhat different rules. Although errors may have been committed by the law court in the trial of an issue out of chancery, in admitting or rejecting evidence, or in giving or refusing instructions, yet if the chancellor is of opinion that the verdict was unaffected by such errors, or is satisfied upon a consideration on the whole case that the result ought not to have been different, had there been no error in the trial of the issue, he may refuse to order a new trial and enter a decree in accordance with the finding of the jury. *Watkins* v. *Carlton,* 10 Leigh, 560; *Brock-*

*enbrough* v. *Spindle,* 17 Gratt. 28; *Powell* v. *Manson,* 22 Gratt. 192; *Miller* v. *Wills,* 95 Va. 337.

The issue out of chancery was tried on the law side of the same court, which on its chancery side rendered the decree based upon the verdict, the same judge presiding. There is nothing in the record to show that the judge was of opinion that the improper evidence admitted did not affect the verdict, for he was of opinion that the evidence admitted was material and relevant, otherwise he would not have admitted it over the appellant's objection. Neither is there anything in the record to show that he was satisfied upon a consideration of the whole case that the result ought not to have been different.

After the verdict was certified from the law side to the chancery side of the court, the decree appealed from was entered, which is as follows:

" These causes came on this day to be heard upon the orders and decrees heretofore entered, upon the order of this court on the law side of this court, the verdict of the jury on the issue heretofore directed between J. W. Repass on the one side, and W. A. Richmond, Thomas S. Buck, and A. R. Willard on the other, and the motion to set aside the said verdict, as shown in the record, having been overruled by the court, and the court having certified its approval of said verdict to the chancery side of this court, it is therefore adjudged, ordered and decreed that the said original bill as to said W. A. Richmond, Thomas S. Buck and A. R. Willard, and the said cross-bill of J. W. Repass, as to said W. A. Richmond, Thomas S. Buck and A. R. Willard, be, and they are hereby, dismissed, and that the said defendants, Richmond, Buck and Willard, will recover of J. W. Repass their costs by them about their defence in this behalf expended."

It is apparent from this decree that the chancellor was of opinion that the verdict was the result of a fair trial in which no

improper evidence had been admitted, and that as the evidence upon the issue directed was hopelessly conflicting, and its correct decision depended upon the credibility of the witnesses, he ought to abide by the verdict of the jury. If there had been no error in the trial of the issue which could have influenced the jury in reaching their verdict, the court was manifestly right; but as it cannot be seen or said that the improper evidence which went to the jury did not affect their verdict, the court's decree, based solely upon the verdict, and not upon a consideration of the whole case, cannot be regarded as free from error.

We are of the opinion, therefore, that the decree appealed from should be reversed, the verdict of the jury set aside, and the cause remanded to the Circuit Court with direction to order a new trial of the issue, unless, upon a consideration of the whole case, including the evidence before the commissioner, which is not before us, he is satisfied what decree should be entered in the case.

*Reversed.*